## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **SHUNG MOORE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16−cv–1239−NJR** |
| | ) | |
| **ZIEGLER,** | ) | |
| **NEWCOMB,** | ) | |
| **AIMEE L. LANG,** | ) | |
| **LOUCKS,** | ) | |
| **HARRIS,** | ) | |
| **SPILLER,** | ) | |
| **PHELPS,** | ) | |
| **WATKINS,** | ) | |
| **KIMBERLY BUTLER, and** | ) | |
| **MONJE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Shung Moore, an inmate in Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff requests declaratory relief, along with compensatory and punitive damages.

The case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

1

(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

On July 27, 2014, Ziegler handcuffed Plaintiff to escort him to the medical unit to receive insulin. (Doc. 1, p. 11). Plaintiff told Ziegler the handcuffs were on too tight; Ziegler tested them, found them fine, and refused to loosen them. *Id*. Plaintiff called Ziegler a jackass when they reached medical. *Id*. When it came time to escort Plaintiff back to his cell, Ziegler then radioed for assistance, and Newcomb came to assist Ziegler. *Id*. When they reached Plaintiff's cell, Ziegler shoved Plaintiff into the cell, and then pulled the lead cuff—a short chain extending from a pair of handcuffs used to maintain control of a prisoner—through the chuck hole. (Doc. 1, p. 12). Plaintiff was still handcuffed at this time. *Id.* Ziegler then began to pull and release the lead cuff in a manner that exerted an extreme downward pressure on Plaintiff's wrists, arms, and shoulders, causing him intense pain. *Id.* Ziegler also un-cuffed Plaintiff abruptly, causing him to

fall. *Id.* Ziegler threatened Plaintiff and left. *Id.* Newcomb failed to intervene at any time during this sequence of events. *Id.*

Plaintiff submitted a sick call slip on July 26, 2014,[1] requesting treatment for the injuries he received as a result of the assault. *Id.* The next day, July 27, 2014, Plaintiff filed an emergency grievance to Butler describing the assault. *Id.* Plaintiff also sent a letter to internal affairs ("IA") regarding the assault and requesting that they preserve video tape evidence. (Doc. 1, p. 13). Spiller and Phelps interviewed Plaintiff regarding the alleged assault on July 29, 2014. *Id.* Plaintiff showed them his swollen, lacerated, and bleeding wrists. *Id.* He requested that Spiller and Phelps take pictures of his injuries, but they refused. *Id.*

On July 30, 2014, Loucks came to Plaintiff's cell to escort him to the health care unit for insulin. *Id.* Loucks waited for Harris to arrive; Harris then cuffed Plaintiff. *Id.* Plaintiff alleges that Harris cuffed Plaintiff to the "crushing point," causing him to experience intense throbbing pain in his wrists. *Id.* Harris then thanked Loucks for allowing him to cuff Plaintiff. *Id.* Loucks escorted Plaintiff past Ziegler, who mocked Plaintiff. *Id.*

Plaintiff saw Watkins and asked to speak to him. *Id.* Plaintiff told Watkins that Loucks, Harris, and Ziegler had worked together to put extremely tight handcuffs on him and then taunted him about them. (Doc. 1, p. 14). Plaintiff showed Watkins the handcuffs. *Id.* Watkins asked Plaintiff some questions, but did not address Plaintiff's handcuffs. *Id.* Plaintiff asked Loucks to loosen his handcuffs after he was placed in the medical bullpen, and two minutes later, Loucks did so. *Id.* Plaintiff submitted a grievance on this issue on August 3, 2014, which his counselor returned to him as "unable to resolve." (Doc. 1, p. 15) Watkins then came to talk to

---

[1] The dates are inconsistent in Plaintiff's original Complaint.

Plaintiff. (Doc. 1, p. 13). Watkins asked Plaintiff whether he had threatened to kill officers. *Id*. Plaintiff denied it. *Id*.

On July 30, 2014, Butler denied that Plaintiff's grievance was an emergency; the next day Plaintiff submitted the grievance to his counselor. *Id*. Plaintiff also submitted another medical request slip regarding his wrist injuries on July 31, 2014. (Doc. 1, p. 15). On August 3, 2014, Plaintiff was once again escorted to the health care unit for insulin. *Id*. On that day, Plaintiff suffered from hypoglycemia and was feeling lethargic and incoherent. *Id*. Harris appeared escorting another inmate and said, "You gonna keep fucking staring at me?" *Id*. Harris then told Plaintiff to turn around and face the wall, which Plaintiff did. *Id*. Plaintiff felt humiliated by this incident. *Id*.

On August 11, 2014, Dr. Trost and Nurse Smith examined Plaintiff's injuries. (Doc. 1, p. 16). Plaintiff told Trost that he had been denied this medical treatment for two weeks and he believed that Lang was responsible for the failure to treat him because he had written a grievance about her. *Id*. Plaintiff also believes that Lang conspired with Ziegler and Newcomb. *Id*. Plaintiff told Trost that his injuries had healed or did not hurt as much. *Id*. Trost ordered an x-ray, which came back negative. (Doc. 1, pp. 16-17).

On August 12, Monje interviewed Plaintiff regarding the alleged assault by Ziegler and Newcomb. *Id*. Monje looked at Plaintiff's wrists. *Id*. He also told him that a review of the video surveillance would be conducted. *Id*. Later, C/O Berry told Plaintiff that he had actually watched video footage of the assault. (Doc. 1, p. 18).

On August 20, 2014, Harris and Weaver came to Plaintiff's cell and ordered Plaintiff to cuff up so that they could take his cellmate to the shower. (Doc. 1, p. 17). Harris placed handcuffs on Plaintiff to the "crushing point." *Id*. Harris then mocked Plaintiff for filing

grievances. *Id*. He then un-cuffed Plaintiff "roughly." *Id.* On August 27, 2014, Harris scowled at Plaintiff. *Id.*

On December 2, 2014, Plaintiff sent an appeal of his grievance complaining that Ziegler and Newcomb assaulted him to the ARB. (Doc. 1, p. 19). On December 9, 2014, he asked Newcomb for another dietary tray, and Newcomb replied that Plaintiff had filed grievances against him. *Id.* Plaintiff submitted an affidavit form Michael Reyes stating that Newcomb gave Plaintiff another tray. (Doc. 1-2, p. 14).

<u>Discussion</u>

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into ten counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

**Count 1 –** Ziegler used excessive force against Plaintiff when he pulled on the handcuff lead, thus wrenching Plaintiff's arms and shoulders downward on July 27, 2014, in violation of the Eighth Amendment's prohibition on cruel and unusual punishment;

**Count 2 –** Newcomb failed to intervene when Ziegler used excessive force against Plaintiff on July 27, 2014, in violation of the Eighth Amendment's prohibition on cruel and unusual punishment;

**Count 3 –** Harris and Loucks used excessive force on Plaintiff on July 30, 2014, when Harris put Plaintiff's handcuffs on too tight in violation of the Eighth Amendment's prohibition on cruel and unusual punishment;

**Count 4 –** Monje and Butler negligently failed to preserve evidence when they did not maintain the video tape surveillance footage of the assault allegedly perpetrated by Ziegler and Newcomb in violation of Illinois state law;

**Count 5 –** Harris retaliated against Plaintiff on August 20, 2014, when he placed handcuffs on him too tight in violation of the Eighth Amendment's prohibition on cruel and unusual punishment;

**Count 6 –**    Ziegler and Harris retaliated against Plaintiff for filing grievances in violation of the First Amendment;

**Count 7 –**    Lang retaliated against Plaintiff for filing grievances against her by denying him medical care in violation of the First Amendment;

**Count 8 –**    Lang was deliberately indifferent to Plaintiff's injuries after the alleged assault when she refused to take steps to ensure that Plaintiff received medical treatment in violation of the Eighth Amendment;

**Count 9 –**    Ziegler, Newcomb, Harris, Lang, Spiller, Phelps, Monje, and Butler engaged in a conspiracy whose purpose was to cover-up the assault by depriving Plaintiff of medical care;

**Count 10 –**    Watkins, Spiller, Phelps, Monje, and Butler failed to adequately investigate Plaintiff's allegations about retaliatory treatment in violation of the Eighth Amendment.

As to Plaintiff's **Count 1**, it has long been recognized that the "core requirement" of the claim under the Eighth Amendment is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). *See also Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010). Factors that guide the Court's analysis of whether an officer's use of excessive force was legitimate or malicious include:  the need for an application of force, the amount of force used, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury suffered by the prisoner. *Hudson*, 503 U.S. at 7; *Hendrickson*, 589 F.3d at 890; *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004). Here, Plaintiff has alleged that he was handcuffed and following orders when Ziegler began pulling on the handcuffs in order to cause Plaintiff pain and suffering. At this time, Plaintiff has stated a claim for excessive force against Ziegler. **Count 1** will be permitted to proceed.

Turning now to **Count 2**, under the Eighth Amendment, a correctional officer may be held liable for failing to intervene if he or she has a realistic opportunity to step forward and protect a plaintiff from another officer's excessive force, but fails to do so. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). Here, Plaintiff has alleged that Newcomb observed Ziegler twisting and pulling Plaintiff's arms through the chuck hole and did not act to stop him. At this stage, Plaintiff's claim against Newcomb for failing to intervene will be allowed to proceed.

**Count 3** is also an excessive force claim, and the same standard discussed above concerning **Count 1** applies. Plaintiff has attempted to name both Harris and Loucks in connection with this claim, despite alleging that Harris is the one who applied the handcuffs too tightly. Plaintiff also alleges that Loucks loosened Plaintiff's handcuffs at his request when he had a chance. On these facts, Plaintiff has not stated a claim against Loucks. Loucks cannot be held liable for excessive force because Plaintiff has alleged that Harris actually applied the force. He also cannot be held liable for failure to intervene because Plaintiff alleges that Loucks loosened his handcuffs "two minutes" after Plaintiff asked him to do so. Thus Loucks will be dismissed from **Count 3** without prejudice. The claim will proceed against Harris, as Plaintiff has alleged that Harris put handcuffs on Plaintiff to the "crushing point" for the purpose of causing him pain. That is sufficient to state an excessive force claim against Harris for the July 30th incident.

**Count 4** does not arise under the Constitution; rather, Plaintiff has stated a claim pursuant to Illinois state law. Where a district court has original jurisdiction over a civil action such as a Section 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921,

936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)). Here, Plaintiff has alleged the defendants committed a negligent tort against him during their investigation of the excessive force incident that occurred on July 27, 2014. That is sufficient for the Court to exercise jurisdiction over his spoliation claim.

Illinois does not recognize a separate tort for spoliation of evidence. Rather, a claim for negligent spoliation falls under negligence law. *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 270 (Ill. 1995). A plaintiff must plead the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, an injury proximately caused by the breach, and damages. *Id.* at 270. A plaintiff must allege that the loss or destruction of evidence resulted in his inability to prove an otherwise valid, underlying claim. *Id.* at 271. This does not mean a plaintiff must first lose his underlying lawsuit before filing a negligent spoliation claim. A plaintiff can bring a negligent spoliation claim concurrently with the underlying suit on which it is based. *Id.* at 272.

Plaintiff has alleged that Monje and Butler had a duty to investigate his allegations, and that they failed to adequately perform that investigation by failing to review and preserve the videotape of the incident. His ability to prove the facts alleged in this lawsuit will be directly impacted by the availability of any video recordings. As Plaintiff has chosen to proceed concurrently with the underlying claims, the Court finds that he has adequately articulated a negligent spoliation claim at this time.

But to the extent that Plaintiff attempts to bring any other claims based on the investigation itself, the claim fails. The failure to investigate an inmate's complaint of staff misconduct does not violate the Constitution. The alleged mishandling of complaints "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v.*

*Hinsley,* 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson,* 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith,* 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996). While recently the Seventh Circuit has held that grievances may establish a defendant's culpable state of mind for a medical deliberate indifference claim, that holding has not been extended to the excessive force context. *See Perez v. Fenoglio*, 792 F.3d 768 (7th Cir. 2015). The Court declines to extend that holding here, because unlike deliberate indifference to an ongoing serious medical need, a complaint about an incident of past excessive force does not give investigatory officials a chance to intervene to stop the violation. The facts of this case are distinguishable from *Perez*.

As to **Count 5**, to succeed on a First Amendment retaliation claim, a plaintiff must prove that (1) he engaged in conduct protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the protected conduct was a "motivating factor" for taking the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). In the prison context, where an inmate is alleging retaliation, it is not enough to simply state the cause of action. The inmate must identify the reasons that retaliation has been taken, as well as "the act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of the claims. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). The inmate need not plead facts to establish the claim beyond doubt, but need only provide the bare essentials of the claim, and in a claim for retaliation, the reason for the retaliation and the acts taken in an effort to retaliate suffice. *Id.*

In **Count 5**, Plaintiff alleges that he filed grievances regarding Harris's behavior on August 3 and August 17. He further alleges that three days after he filed a grievance against Harris, Harris came to his cell, cuffed him too tightly, and made negative comments about

Plaintiff's grievance activity. Plaintiff has adequately pleaded that he engaged in protected speech and alleged facts that create an inference that Harris acted to deter that speech on August 20th.[2] **Count 5** will proceed.

To the extent that Plaintiff has alleged retaliation based on his other interactions with Harris and Ziegler's conduct, however, those claims must be dismissed. In **Count 6**, Plaintiff alleges that Ziegler and Harris retaliated against him, but he never alleges that he filed grievances regarding those guards prior to the other alleged acts of retaliation. Specifically, Plaintiff's Complaint fails to allege that he filed any grievances regarding Ziegler prior to the events of July 27th. Plaintiff has alleged that he called Ziegler a jackass prior to the alleged assault, but that is not protected conduct. In order to determine whether speech constitutes protected First Amendment activity, the Court employs the *Turner* test. In *Turner v. Safley*, the Supreme Court articulated the penological interest test: "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. 78, 89 (1987). The question is whether the speech at issue is consistent with legitimate penological objectives. *Bridges v. Gilbert*, 557 F.3d 541 (7th Cir. 2009). Here, using a curse word to refer to a prison guard is not consistent with a legitimate penological objective. Plaintiff's use of the word "jackass" is not protected speech, and so to the extent that Plaintiff has predicated his retaliation claim on that statement, the claim fails.

As to Harris for his conduct prior to the August 20th incident, Plaintiff does not allege that he filed any grievances against Harris or otherwise engaged in protected conduct in front of him prior to the July 30th incident. Plaintiff's grievances allege that Harris was retaliating

---

[2] Although the Court has construed this as a claim, Plaintiff's Complaint does not allege that he ever filed a grievance on this incident, and the incident is not mentioned in the grievances attached to the Complaint, suggesting that Plaintiff may have failed to exhaust his remedies on this point. Nonetheless, the Court does not decide this issue here.

against him because of what happened with Ziegler. But Plaintiff does not present this theory in the Complaint. He also does not allege that Harris was aware of his grievances against Ziegler. He does not allege that Harris personally picked up any grievances or that Harris spoke to those involved in the grievance process. Plaintiff does not allege that Harris and Ziegler ever spoke to each other. Plaintiff has alleged that Harris and Ziegler both individually made comments regarding his complaints, but that does not establish that Harris was retaliating against Plaintiff because of the incident with Ziegler. Plaintiff also alleges that Harris "verbally assaulted" him on August 3, 2014,[3] but Plaintiff never alleges that he filed a grievance against Harris between July 30 and August 3. Thus, the verbal comments could not have been made in retaliation. And even if they were, being told to stop "fucking staring at me" and "turn around and face the fucking wall," is not the type of conduct that would deter First Amendment expression. In fact, Plaintiff alleges that he filed a grievance approximately eight hours later against Harris, showing that he was not deterred from engaging in protected activity. **Count 6** will be dismissed without prejudice.

Plaintiff's claims against Lang also must be dismissed. As an initial matter, Plaintiff does not actually make any allegations against Lang. Instead, he includes allegations that he told Trost, who is not a defendant here, certain things about Lang. Plaintiff cannot raise claims via these kinds of secondhand statements. Plaintiff has not adequately pleaded a retaliation claim against Lang. He has not alleged that he filed a grievance against her prior to July 27th. Therefore, he had not adequately alleged that he engaged in protected conduct under the retaliation framework. Moreover, Plaintiff has not alleged that Lang saw any of his request slips for health care. He has not alleged that he asked Lang for medical care face-to-face. He has not

---

[3] Plaintiff also refers to an August 17, 2014 grievance, in which he identifies this incident as an act of retaliation. (Doc. 1, p. 16).

alleged that Lang is responsible for scheduling health care visits or nurse sick call. Plaintiff's Complaint does not establish that Lang took any action at all to deter Plaintiff's protected First Amendment conduct. All of Plaintiff's allegations against her are merely conclusory statements that she took action against him; these statements are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555; *Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009). Thus, Plaintiff has failed to adequately state a retaliation claim against her, and **Count 7** will be dismissed without prejudice.

The same infirmities apply to **Count 8**. In order to state a claim for deliberate indifference to a serious medical need, an inmate must show (1) that he suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. A medical need is "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

"Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

First of all, while Plaintiff alleges that he suffered from bruises and contusions as a result of Ziegler's alleged assault, he also concedes that the injury healed without medical intervention.

Therefore it is debatable whether Plaintiff suffered from a serious medical need. Even if he had, this claim would still be dismissed at this time, because Plaintiff has not alleged any facts from which an inference that Lang knew about his alleged injuries could be drawn. Plaintiff must allege that Lang had the requisite mental state—that she knew about the allegedly serious medical need and deliberately choose not to treat it. Here, Plaintiff has only presented his own conclusion that because he was not called to the health care unit for his alleged injuries, that Lang must have been responsible. As discussed above, this is not sufficient to state a claim. **Count 8** also will be dismissed without prejudice at this time.

Turning to **Count 9**, Plaintiff has alleged that the defendants engaged in a conspiracy against him. Claims of conspiracy require a factual foundation to survive preliminary review. *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). "To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 304-05 (7th Cir. 2011). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id.* at 305 (quoting *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 263 (7th Cir. 1999)).

Plaintiff has done nothing more than make conclusory allegations regarding a conspiracy. He has not alleged that any of the named defendants agreed to violate his constitutional rights together. Although he makes allegations that certain guards asked for assistance in carrying out their tasks, that does not establish the existence of a conspiracy. Neither does Plaintiff's dissatisfaction with the result of the internal affairs investigation. Plaintiff's allegations in

13

support of his conspiracy claim are simply too vague to proceed at this time. Plaintiff's **Count 9** will be dismissed without prejudice.

Finally, Plaintiff alleges in **Count 10** that Defendants failed to investigate his retaliation claims. As discussed more fully above in connection with **Count 4**, Plaintiff does not have an independent constitutional claim for failure to investigate his allegations. Additionally, Plaintiff has not alleged that there was no investigation, rather he has complained that he disagrees with the conclusion of the investigation and did not care for the manner in which it was conducted. This is not sufficient to state any kind of claim, and for that reason, **Count 10** will be dismissed with prejudice.

## Pending Motions

Plaintiff's Motion to Appoint Counsel (Doc. 3) will be addressed by the magistrate judge assigned to this case.

## Disposition

**IT IS HEREBY ORDERED** that **COUNTS 1-5** survive threshold review. **COUNTS 6-9** are **DISMISSED without prejudice** against Defendants for failure to state a claim upon which relief may be granted. Defendants Loucks, Lang, Spiller, and Phelps are **DISMISSED without prejudice**. **COUNT 10** is **DISMISSED with prejudice**. Defendant Watkins is **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for **Ziegler, Newcomb, Harris, Butler and Monje**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to

sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including a decision on the pending motion for recruitment of counsel (Doc. 3) and resolution of the motion for preliminary injunction.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Wilkerson** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding the fact that his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 28, 2016**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**