IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SHUNG MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-CV-1239-NJR-GCS |
| | ) | |
| RYAN ZIEGLER, JOSEPH NEWCOMB, AIMEE L. LANG, RICHARD HARRIS, KIMBERLY BUTLER, and MICHAEL MONJE, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Pending before the Court is a motion for summary judgment filed by Defendants Kimberly Butler, Richard Harris, and Michael Monje (Doc. 74). Plaintiff Shung Moore ("Moore") filed a *pro se* response in opposition to the motion (Doc. 93). Also pending is a motion for summary judgment recently filed by Defendant Aimee Lang (Docs. 101-103), which Moore concedes should be granted (Doc. 104). For the following reasons, the Court grants in part and denies in part the motion for summary judgment filed by Defendants Butler, Harris, and Monje and grants the motion filed by Defendant Aimee Lang.

## BACKGROUND

Moore, an inmate at Menard Correctional Center, brought this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. On August 1, 2018, the undersigned district judge allowed Moore's first amended complaint to be filed and to proceed on the following claims:

| | |
|---|---|
| Count 1- | Defendant Ziegler used excessive force against Moore when he pulled on the handcuff lead, thus wrenching Moore's arms and shoulders downward on July 25, 2014, in violation of the Eighth Amendment's prohibition on cruel and unusual punishment; |
| Count 2 – | Defendant Newcomb failed to intervene when Defendant Ziegler used excessive force against Moore on July 25, 2014, in violation of the Eighth Amendment's prohibition on cruel and unusual punishment; |
| Count 3- | Defendant Harris used excessive force on Moore on July 30, 2014, when Defendant Harris put Moore's handcuffs on too tight in violation of the Eighth Amendment's prohibition on cruel and unusual punishment; |
| Count 4- | Defendant Monje and Defendant Butler negligently failed to preserve evidence when they did not maintain the video tape surveillance footage of the assault allegedly perpetrated by Defendant Ziegler and Defendant Newcomb in violation of Illinois State law; |
| Count 5- | Defendant Harris retaliated against Moore on August 20, 2014, when he placed handcuffs on him too tight in violation of the Eighth Amendment's prohibition on cruel and unusual punishment;[1] and |
| Count 6- | Defendant Lang was deliberately indifferent to Moore's injuries after the alleged assault when she refused to take steps to ensure that Moore received medical treatment in violation of the Eighth Amendment. |

(Doc. 76).

Defendants Butler, Harris, and Monje move for summary judgment on Counts 3, 4, 5 arguing the claims against Defendant Harris are barred by the statute of limitations; the evidence Moore has with respect to Defendant Harris is not sufficient for liability

---

[1] The record reflects that the incident occurred on August 3, 2014, not August 20, 2014.

under either the Eighth Amendment or the First Amendment; or alternatively, Defendant Harris is entitled to qualified immunity. Lastly, Defendants argue Moore's claim for negligent spoliation against Defendant Monje and Defendant Butler is barred by state law sovereign immunity and the claim fails on the merits.

## RELEVANT FACTS

The following facts are taken from the record and presented in the light most favorable to Moore, the non-moving party, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

Moore claims Defendant Harris cuffed him tightly because Defendant Harris works closely with Defendant Ryan Zeigler. Moore previously accused Defendant Ziegler of handcuffing him too tightly and assaulting him. Further, Moore claims that Defendant Harris cuffed him tightly in retaliation for filing a grievance against Defendant Ziegler, for making a complaint against correction staff in general, and for requesting an Internal Affairs ("IA") investigation into the officers' conduct.

On July 27, 2014, Moore filed an emergency grievance regarding an assault by Defendant Ziegler and Defendant Joseph Newcomb. Moore also sent a letter to Defendant Butler on July 27, 2014, requesting the review and preservation of any video tape evidence regarding his assault by Defendant Ziegler and Defendant Newcomb. On July 29, 2014, Officer Andrew Spiller of IA interviewed Moore regarding his assault by Defendant Ziegler and Defendant Newcomb.

On July 28, 2014, Defendant Butler emailed Andrew Spiller about Moore: "Claims he was assaulted by C/O Zieglar on 6 gallery, north 2 on the 25th … [sic] Please interview

the inmate and review the tapes. Let me know what you find." (Doc. 74-2, p. 3). On July 29, 2014, Officer Spiller responded to Defendant Butler:

> Offender MOORE B12832 was interviewed this morning and the following information was obtained:
> On the 25th July on the 3-11 shift, he was escorted from his cell (N2-6-45) for insulin. After exiting the cell, he asked C/O Zieglar (escorting officer) if he could loosen his cuffs. Zieglar stated they were fine and did not loosen the cuffs. They continued to the infirmary. After he entered the infirmary C/O Newcomb stated "What's up, MOORE?" Moore replied "Dealing with this Jackass." Referring to C/O Ziegler. MOORE received his insulin shot and was escorted out of the infirmary. MOORE believes right before they entered the 6 gallery, by the sergeants desk, Zieglar stopped him and stated "I'll show you who's a jackass, nigger." They then entered the gallery and began walking towards the cell. C/O Zieglar asked for another C/O to meet him over the radio. C/O Newcomb showed up and assisted with the escort. When they arrived at his cell, they pushed him into the cell, but maintained control of his lead cuff threw the chuckhole. MOORE stated he was then yanked backwards and his arms were forced out of the chuckhole. MOORE stated the way they did it, was excessive. MOORE was not sure if Newcomb assisted or if it was only C/O Zieglar. MOORE stated his cuffs then "popped" off and he fell towards the front of the cell.
>
> All available camera footage was reviewed:
> The back of 6 gallery camera currently does not work, therefore there is no footage of offender MOORE being placed back in his cell N2-6-45.
> Two cameras on the gallery, both point at . . . captured Officer Ziegler escorting offender MOORE from and back to his cell. During the small windows of footage, C/O Ziegler does not appear to be showing any aggression towards offender MOORE. When they walk past the second camera . . . towards offender Moore's cell N2-6-45, Officer Newcomb can be seen walking past the camera approximately 30 seconds later.

(Doc. 74-2, ps. 2-3).

On July 30, 2014, Defendant Harris came to Moore's cell and told him to "step up to the damn chuck hole and cuff up," using an aggressive tone. Defendant Harris placed handcuffs on Moore causing him "crushing pain" and an immediate throbbing sensation

in both of his wrists. Thereafter, Defendant Harris told Officer Loucks "thanks" and Defendant Harris walked off. Officer Loucks then escorted Moore to medical past Defendant Ziegler who stated in an aggressive tone, "those cuffs ain't to tight for you, are they?" Sometime after Moore arrived at medical, Officer Loucks loosened the cuffs at Moore's request.

Moore testified that he had deep handcuff impressions on his wrists that looked like ridges because the handcuffs were clamped to the bone. Moore had been forced to endure this pain for about fifteen minutes until Officer Loucks eventually loosened the handcuffs. Even though there was no blood or cuts on Moore's wrists from this incident, it was only five days removed from the July 25th incident, when Moore claimed that Defendant Ziegler and Defendant Newcomb assaulted him by yanking on his handcuffs in a purposeful and aggressive manner. Moore claimed that, after the July 25th incident, he experienced chronic numbness and that he could not use his hands. Moore further testified that he did not receive medical attention until August 11th—at which time he was found to have scar tissue damage on his wrists.

At the time of the July 30th incident, Defendant Harris was working the shower detail. As part of that detail, officers are required to cuff and transport inmates in segregation from their cells to the shower. Defendant Ziegler was also on the shower detail at the time and typically worked with Defendant Harris on that detail five days a week. On the day of the July 30th incident, however, Officer Loucks was charged with escorting Moore to the infirmary for his insulin shot. Because Officer Loucks was the

transport officer, it would have been his responsibility (not Defendant Harris's) to cuff Moore for purposes of transport.

On August 3, 2014, Moore saw Defendant Harris in the medical unit and Defendant Harris said to Moore: "[y]ou gonna keep [expletive] staring at me?" and told Moore: "[T]urn around and face the [expletive] wall." Moore contends that Defendant Harris began to retaliate against him by coming to his cell and making comments to him about filing a grievance and putting handcuffs on him.

On August 3, 2014, Moore submitted an emergency grievance to the Warden against Defendant Harris for excessive use of force. Moore claims he did not receive a response. Also on August 3, 2014, Moore sent an emergency grievance to the Warden against Defendant Harris for retaliation. Moore claims he did not receive a response. On August 13, 2014, Moore filed a second emergency grievance against Defendant Harris for excessive force, to which he did receive a response.[2] Also on August 13, 2014, Moore filed a second emergency grievance against Defendant Harris for retaliation and intended it for his correctional counselor, but it was incorrectly sent to the Grievance Office and returned to Moore on August 14, 2014.

On August 8, 2014, Defendant Butler received a phone message concerning Moore's claims that Defendant Ziegler assaulted him. Defendant Butler ordered that Moore be seen by medical staff and ordered Defendant Monje to determine if there was staff misconduct.

---

[2] This grievance was received August 19, 2014, and states "Refer to IA."

An August 14, 2014 Memorandum sent to Moore from the grievance officer states: "Subject: Grievance (s) dated 8/13/14 regarding Staff conduct" and "The attached is being returned for the reason(s) listed below: directly contradicts which records a different log for the same date of August 14, 2014."

Moore states he sent grievances regarding Defendant Harris on September 4 and October 9, 2014, which were duplicate grievances of his August 3, 2014 grievances. Moore contends that these also went unanswered. On February 26, 2015, Moore sent grievances regarding Defendant Harris to the Administrative Review Board ("ARB"). On March 31, 2015, the ARB rejected these grievances because they were untimely.

**LEGAL STANDARD**

Summary judgment is proper only if the moving party can demonstrate there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). Any doubt as to the existence of a genuine issue of fact must be resolved against the moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 841 (7th Cir. 2004).

A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of h[is] case with respect to which []he has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party asserting that a fact is genuinely disputed must support that assertion by citing to particular materials in the record or by showing that the materials in the record

do not establish the absence of a genuine dispute. *See* FED. R. CIV. P. 56. If the non-moving party does not show evidence exists that would reasonably allow a fact-finder to decide in its favor on a material issue, the court must enter summary judgment against the non-moving party. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

The Seventh Circuit has stated summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)).

ANALYSIS

I. **Statute of Limitations**

Defendant Harris argues that all of Moore's claims against him are barred by the applicable statute of limitations and that tolling does not apply to Moore's claims because he did not properly exhaust his claims against Defendant Harris. Specifically, Defendant Harris argues that the statute of limitations is two years, that Moore's claims against Defendant Harris occurred on July 30 and August 3, 2014, and that Moore did not file suit until November 10, 2016. Moore counters that he timely submitted grievances to which the prison never responded.

Claims brought pursuant to Section 1983 borrow the statute of limitations from the state in which the alleged violation occurred. *See Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998). Illinois has a two-year statute of limitations for personal injury claims. *See* 735 ILL. COMP. STAT. § 5/13-202. Thus, the applicable statute of limitations for Section

1983 claims arising in Illinois is two years. *See Woods v. Illinois Dep't of Children and Family Servs.*, 710 F.3d 762, 766 (7th Cir. 2013).

Federal courts also borrow the forum state's principles of tolling. *See Smith v. City of Chicago Heights,* 951 F.2d 834, 839-840 (7th Cir. 1992). Illinois requires tolling by statute where "the commencement of an action is stayed by injunction, order of a court, or statutory prohibition." 735 ILL. COMP. STAT. § 5/13-216. The Seventh Circuit has found that federal courts must toll the statute of limitations period while an inmate exhausts his administrative remedies as required by the Prisoner Litigation Reform Act ("PLRA"). *See Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001). In other words, the statute of limitations in Section 1983 prisoner lawsuits is tolled while an inmate exhausts the administrative grievance process. *See Klebanowski v. Sheahan,* 540 F.3d 633, 639 (7th Cir. 2008); *see also Johnson,* 272 F.3d at 522. Tolling begins when the prisoner files his grievance and ends when the administrative review process is over. *See, e.g., Hatch v. Briley,* 230 F. App'x 598, 599 (7th Cir. 2007) (noting that time that passed between the plaintiff's injury and when he filed his grievance was not part of the tolling period; rather, the tolling period began the day the plaintiff filed his grievance).

Equitable tolling is available when a plaintiff shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Gray v. Zalecky*, 865 F.3d 909, 912 (7th Cir. 2017) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). The court must evaluate the circumstances holistically, considering "the entire hand that the petitioner was dealt" rather than taking each fact in

isolation. *Socha v. Boughton*, 763 F.3d 674, 686 (7th Cir. 2014). Equitable tolling is "rare" but it does not "exist in name only." *Id*. at 684. It is instead a "highly fact-dependent area in which courts are expected to employ flexible standards on case-by-case basis." *Id*.

Here, Moore contends that he repeatedly filed and refiled the same grievances against Defendant Harris that went unanswered by the prison staff. There is no indication that the ARB responded to any of the original grievances and the resubmitted grievances until March 13, 2015 (Doc. 93, p. 80). Once Moore submitted his additional grievances and did not receive a response, the grievance process became unavailable to him as he had no further instruction from the ARB. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources); *see also Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). On these facts, the Court finds that Moore did all that he could to exhaust his administrative remedies and that the time during this period should be tolled for statute of limitations purposes. Thus, with that tolling, Moore's lawsuit against Defendant Harris was timely filed.

## II. Excessive Force Claim (Count 3)

"Correctional officers violate the Eighth Amendment when they use force not in a good faith effort to maintain or restore discipline, but maliciously and sadistically for the very purpose of causing harm." *Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018) (internal quotations omitted). The Seventh Circuit recognizes excessive force claims based on overly tight handcuffs. *See Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006). This type of claim cannot, however, be predicated on a *de minimis* use of force. *See*

*DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 1999). Rather, the quantum of force required for a constitutional violation is that which is "repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 10 (1992).

In determining whether an injury is more than *de minimis*, "several factors are relevant, including the need for the application of the force, the amount of force applied, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury that force caused to an inmate." *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004). The relevant inquiry is the amount of force used, not the nature of the plaintiff's injuries. *See Hudson*, 503 U.S. at 9; *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (vacating dismissal of excessive-force claim because district court erroneously focused on extent of injury rather than nature of force applied); *see also Reid v. Melvin*, 695 F. App'x 982, 983 (7th Cir. 2017) (stating that "[t]he extent of the plaintiff's injury is relevant only insofar as it sheds light on the level of force used.").

Defendant Harris relies on *Dewalt v. Carter*, 224 F.3d 607 (7th Cir. 2000), for the proposition that Moore failed to show that he suffered more than a *de minimis* use of force. In *Dewalt*, the plaintiff alleged an Eighth Amendment excessive use of force claim against a correctional officer who shoved the plaintiff towards a doorway and the door frame. *Id.* at 610-611. The plaintiff alleged that he suffered bruising on his back, but the prison medical staff did not note any visible injury and did not order any x-rays. *Id.* at 611. The Seventh Circuit held that the district court did not err in dismissing the plaintiff's excessive force claim for failure to state a claim. *Id.* at 620. The Seventh Circuit reasoned

that the correctional officer's shove was "a single and isolated act, unaccompanied by further uses of force." *Id.* The Seventh Circuit further reasoned that the plaintiff's injuries did not appear to be particularly serious. *Id.* As such, the Seventh Circuit concluded that the use of force fell short of what was required under the Eighth Amendment. *Id.*

The facts here, however, after drawing all inferences in Moore's favor, are not analogous to those in *Dewalt*. Defendant Harris argues that his cuffing of Moore is more like a single, isolated act, and the use of force was such that would normally be applied in similar situations. But Defendant Harris's cuffing of Moore on July 30th was not a single, isolated act; instead, it was an act that cannot be divorced from the previous July 25th cuffing incident involving Defendant Ziegler and Defendant Newcomb about which Moore complained. A reasonable juror could conclude that Defendant Harris's July 30th cuffing incident was done maliciously and sadistically against Moore because Moore had previously complained against Defendant Harris's shower detail partner, Defendant Ziegler. This is supported by the fact that Defendant Harris, and not Officer Loucks, was the one who cuffed Moore, even though Officer Loucks was the individual responsible for transporting Moore to medical. This is further supported by the fact that, as Moore passed Defendant Ziegler on the way to medical, Defendant Ziegler commented on whether the cuffs were on too tight. Finally, Moore testified that Defendant Harris would come into his cell and harass Moore for filing grievances.

It is also clear that the amount of force used against Moore was far more than the isolated push suffered by the plaintiff in *Dewalt*. The Seventh Circuit in *Dewalt* concluded

that the amount of force used against the plaintiff was *de minimis* because there did not appear to be any visible injury to the plaintiff. Here, however, Defendant Harris purposefully clamped the handcuffs on Moore to the bone causing him a crushing pain and throbbing sensation in both of his wrists, which lasted for more than fifteen minutes—until Moore's handcuffs were loosened. Moore also testified that there were ridges on his wrists because of the incident. There was also evidence of scar tissue damage on Moore's wrists when he was finally seen by medical personnel on August 11th. Thus, a reasonable juror could conclude that the force applied by Defendant Harris was more than *de minimis* and was not justified under the circumstances. As such, the evidence construed in the light most favorable to Moore is sufficient to withstand summary judgment on the excessive force claim.

### III.  Retaliation Claim (Count 5)

Moore contends that Defendant Harris retaliated against him by handcuffing him too tight again on August 3, 2014, in violation of his First Amendment rights. To prevail on his First Amendment retaliation claim, Moore must show that: (1) he engaged in activity protected by the First Amendment; (2) Defendant Harris took actions that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) the First Amendment activity was at least a "motivating factor" in Defendant Harris's decision to take those actions. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). The filing of a lawsuit is protected by the First Amendment. *See Novoselsky v. Brown*, 822 F.3d 342, 355 (7th Cir. 2016).

Here, a reasonable juror could find that Defendant Harris handcuffed Moore too tight again on August 3, 2014, in retaliation for filing grievances, for filing emergency grievances, and for sending letters to Defendant Butler. Moore contends that Defendant Harris subjected him to continuing harassment because of his grievances/complaints. Moore's testimony concerning his grievances against Officers Defendant Newcomb and Defendant Ziegler for the July 25, 2014 assault, his testimony concerning his grievances against Defendant Harris, the comments that Defendant Harris supposedly made prior to handcuffing him and the comments that Defendant Harris supposedly made to Moore after the incidents are sufficient to establish disputes of fact regarding his claim of retaliation. Thus, the Court also denies summary judgment as to this issue.

IV. **Qualified Immunity**

Further, the undersigned finds that Defendant Harris is not entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Humphries v. Milwaukee Cnty.*, 702 F.3d 1003, 1006 (7th Cir. 2012) (citations and quotation marks omitted).

As noted above, a jury could find that Defendant Harris violated Moore's constitutional rights. Thus, the only remaining question is whether those rights were clearly established. In 2014, it was clearly established that using handcuffs to inflict prolonged or unnecessary pain on a prisoner violated the Eighth Amendment, and that prison officials may not retaliate against inmates for filing grievances. *See Ajala v. Tom*,

658 F. App'x 805, 806 (7th Cir. 2016); *see also Rabin v. Flynn*, 725 F.3d 628, 636 (7th Cir. 2013) (holding that officer who knew tight handcuffs would cause arrestee unnecessary pain not entitled to qualified immunity); *see also DeWalt*, 224 F.3d at 618 (noting that prison officials may not retaliate against inmates for filing grievances). Thus, Defendant Harris is not entitled to qualified immunity on the excessive force claim or the retaliation claim.

V.      **Negligent Spoliation (Count 4)**

Defendant Butler and Defendant Monje argue that this claim is barred by state law sovereign immunity as they had no duty to preserve the video and that any duty that could be imputed on them would arise solely because of their employment.

"Under Illinois law, spoliation of evidence is treated as a negligence action." *Duran v. Town of Cicero*, 653 F.3d 632, 644 (7th Cir. 2011) (citing *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 270–271 (Ill. 1995)); *see also Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509-510 (7th Cir. 2007) (stating that "negligent spoliation is not itself an independent tort but rather a type of negligence."). "Accordingly, a plaintiff claiming spoliation of evidence must prove that: (1) the defendant owed the plaintiff a duty to preserve the evidence; (2) the defendant breached that duty by losing or destroying the evidence; (3) the loss or destruction of the evidence was the proximate cause of the plaintiff's inability to prove an underlying lawsuit; and (4) as a result, the plaintiff suffered actual damages." *Martin v. Keeley & Sons, Inc.*, 979 N.E.2d 22, 27 (Ill. 2012). Although the "general rule in Illinois is that there is no duty to preserve evidence," a "voluntary undertaking" may give rise to such a duty, particularly where "a reasonable person in the defendant's

position should have foreseen that the evidence was material to a potential civil action." *Id.* at 28.

The Illinois State Lawsuit Immunity Act provides that, except as provided in the Court of Claims Act, among others, the State of Illinois shall not be made a defendant or party in any court. *See* 745 ILL. COMP. STAT. § 5/1. The Court of Claims Act requires all claims against the state "sounding in tort" to be heard in that court. 705 ILL. COMP. STAT. § 505/8(d). "[S]tate rules of immunity are binding in federal court with respect to state causes of action." *Omosegbon v. Wells*, 335 F.3d 668, 673 (7th Cir. 2003).

As such, if Moore's state law negligent spoliation claim is really against the State of Illinois itself, rather than against Defendants Monje and Butler, then the claim must be dismissed without prejudice and litigated in the Illinois Court of Claims. *See Jinkins v. Lee*, 807 N.E.2d 411, 417 (Ill. 2004). "Whether an action is in fact one against the State, and hence one that must be brought in the Court of Claims, depends not on the formal identification of the parties but rather on the issues involved and the relief sought." *Healy v. Vaupel,* 549 N.E.2d 1240, 1247 (Ill. 1990). As it relates to the issues involved, the Illinois Supreme Court has stated that an action is against the state when there are:

> (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State . . . .

*Id.* "Sovereign immunity affords no protection, however, when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority." *Nichol v. Stass*, 735 N.E.2d 582, 586 (Ill. 2000).

The Court finds that this claim is barred by sovereign immunity and should have been filed with the Illinois Court of Claims, because the evidence reveals that this is a claim against the State of Illinois. Moore argues that the claim is against Defendant Butler and Defendant Monje in their individual capacities and that they had a duty to him, a state prisoner, as state supervisory officials to preserve this evidence that was/is material to a potential civil action. Further, as state supervisory officials charged with maintaining the facility security surveillance cameras, Moore contends that Defendant Butler and Defendant Monje were required to ensure that the cameras were fully functional for security purposes.

The Court disagrees. The negligent spoliation claim meets all the requirements outlined in *Healy* for ascertaining whether a claim is actually against the State. Moore does not allege that Defendant Butler and Defendant Monje acted outside the scope of their authority. Rather, Moore contends that Defendant Butler and Defendant Monje failed to exercise the authority they had through their employment with the State of Illinois. In addition, whatever duties Defendant Butler and Defendant Monje had to preserve the video tapes in the prison facility arises solely by virtue of their state employment. Finally, the claim against Defendant Butler and Defendant Monje involves matters within their normal functions in the correctional facility. For these reasons, the

Court grants summary judgment and dismisses without prejudice Count 4, as the Illinois Court of Claims is conferred with the exclusive jurisdiction to hear such a claim.

## VI.     Defendant Aimee Lang (Count 6)

Defendant Lang filed a motion for summary judgment on February 5, 2019 (Docs. 101-103), arguing that she is entitled to judgment as a matter of law because she was not at work during much of the alleged timeframe and because there is no evidence showing that Moore ever requested medical treatment from her. On March 15, 2019, Moore filed a response to the motion (Doc. 104), in which he concedes that there are no meritorious arguments in opposition to Lang's motion. In a nutshell, it appears that Moore named the wrong defendant, and he now seeks to dismiss Lang from the case with prejudice. Accordingly, the motion filed by Lang is granted, and she is dismissed from this action with prejudice.

## Conclusion

For the reasons set forth above, the Court **GRANTS in part** and **DENIES in part** the motion for summary judgment filed by Defendants Butler, Harris, and Monje (Doc. 74). The Court denies the motion as to the claims against Defendant Harris in Counts 3 and 5 and grants the motion as to the claims against Defendant Butler and Defendant Monje in Count 4. Moore's claim in Count 4 is **DISMISSED without prejudice** as to refiling in the Illinois Court of Claims. Thus, Defendant Butler and Defendant Monje are **DISMISSED without prejudice**, and the Clerk of Court is **DIRECTED** to **TERMINATE** these individuals as parties to this case.

In addition, the motion for summary judgment filed by Defendant Lang (Doc. 101)

is **GRANTED**, and the claims against her are **DISMISSED with prejudice**. The Clerk shall terminate Lang as a party to the case and enter judgment in her favor at the conclusion of the entire action.

Magistrate Judge Sison is **DIRECTED** to recruit counsel to represent Moore at trial. Once counsel is recruited and enters an appearance, the undersigned will set this matter for a status conference to select firm dates for a final pretrial conference and jury trial.

**IT IS SO ORDERED.**

DATED:   March 26, 2019

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**